LOTTINGER, Judge.
This is a suit for workmen’s compensation. The petitioner is Joseph Guillory, who was employed as a common laborer by Oscar Sylvester, Jr. The suit is against the employer’s compensation insurance carrier, Southern Farm Bureau Casualty Insurance Company. The Lower Court awarded judgment in favor of petitioner and against the defendant for total and permanent disability.
The facts show that petitioner was working for Oscar Sylvester, Jr., a contractor, during the month of July, 1956. On July 9, 1956 the crew was engaged in jacking up a large tank, and as petitioner was unaccustomed to such tasks his employer was standing next to him and helping him. Petitioner suddenly fell to the ground and complained of an ankle injury. Evidently, in some manner, he had twisted or turned his ankle as the record discloses that petitioner suffered from a hairline fracture of the ankle.
The occurrence of the accident is not denied by defendant, and defendant admits that if petitioner is entitled to any compensation benefits the amount thereof is $23.40 per week. Actually, the only question involved is the degree of disability or lack of disability of petitioner. The Lower Court awarded judgment in favor of petitioner and against defendant for a period not to exceed 400 weeks at the rate of $23.40 per week. Judgment was also rendered in favor of petitioner and against defendant for attorney fees in the amount of $2,000, plus penalties of 12 per cent on all past due installments. The defendant has taken this appeal.
There is some lay testimony in the record to the effect that petitioner was suffering no physical deformities and that he was a good and hard worker, prior to the occurrence of the accident in question. Several of his relatives and friends testified to the effect that they had noticed petitioner’s feet prior to the accident and that there was nothing abnormal about them. They testified that they had washed or rested-their feet on several occasions with petitioner and had ample opportunity to notice a defect if one were present. These lay witnesses further testified that subsequent *278 to the accident the petitioner complained of his left foot and walked with a decided limp. They further testified that his foot was swollen and that the petitioner was unable to do any work.
Three doctors testified in this matter. Dr. Aswell, a general practitioner, was the first doctor to treat petitioner. He first saw the petitioner, on July 9, 1956, and stated that petitioner was complaining of pain in and around the ankle. Dr. Aswell subsequently placed the foot in a cast on July 28th and removed it on August 31, 1956. After this an Ace Bandage was applied and this did not prevent movement of the ankle nor did it prevent the petitioner from walking. On or about October 19, 1956 Dr. Aswell discharged the petitioner to return to light work and stated that use of the foot should have improved his condition. Dr. Aswell diagnosed the injury as a “mild fracture of the ankle” and that the injury should have been well healed after a period of a few months, however, the accident could have aggravated the arthritic condition of plaintiff’s foot and made it worse. The medical testimony of Dr. William Meuleman, an orthopedic surgeon of Lafayette, Louisiana was by way of deposition. He testified that he first examined the petitioner on May 29, 1957 and that petitioner was suffering from an arthritic process in the left foot. At the time of this first examination, Dr. Meuleman stated that there was no evidence of a recent fracture to the foot and that the only thing he found was a sprain dr aggravation of pre-existing conditions. He stated that this arthritic condition was definitely present prior to the accident of July. Dr. Meul-eman said that the X-rays taken by Dr. Aswell in July and October of 1956 showed the same conditions as were shown in the X-rays which he took during May, 1957. However, an X-ray taken by Dr. Aswell on October 10, 1956 did show the slight fracture which was shown as healed by an X-ray taken by Dr. Meuleman in May of 1957. Dr. Meuleman testified that there was no residual disability as a result of the fracture, and that in May of 1957, the petitioner was as well as he was in July of 1956, and that he is able to return to work.
Dr. George B. Briel, an orthopedic surgeon, testified as a witness for petitioner.
He examined the petitioner on December 11, 1956 and April 24, 1957. Dr. Briel testified that at the time of his said examinations the petitioner was unable to do hard manual work. He testified that it may take several months yet before the pain will subside. Dr. Briel stated that the sprain was superimposed upon a deformed joint, which is the reason for the slow progress in petitioner’s physical condition.
During the trial the Lower Court examined the left foot of plaintiff and compared it with the right foot and found that the left foot was considerably swollen.
' Considering all the medical testimony, we feel that there is no doubt but that the petitioner did receive a hairline fracture to the ankle bone as a result of the injury. All of the doctors testified that this injury was aggravated by virtue of a prior arthritic condition in petitioner’s foot, therefore, although the actual injury itself has healed, the accident did aggravate a' prior condition, which, of course, is com-pensable under the Compensation Laws of our State. We therefore feel that, in ac-’ cordance with the greater weight of the medical testimony, the petitioner was unable to do work of any reasonable character at the time of the trial of the matter, and was therefore entitled to the judgment as rendered by the Lower Court. Should the injury subside in the future, of course the. defendant has the right to his day in Court. Certainly there was no obvious error in the judgment below.
The petitioner claims penalties under the Louisiana Compensation Law for the arbitrary and capricious failure of defendant to continue compensation payments after November 19, 1956. The record discloses that during October, 1956 Dr. Aswell told *279 petitioner that he could go back to light work. Dr. Aswell testified that he was sure he had written the defendant about November 1, 1956 informing them that petitioner had been discharged as able to go to work. The letter to this effect was not introduced into evidence, however we believe the testimony of Dr. Aswell to show that the termination of compensation payments by defendant was not capricious and arbitrary so as to justify the penalties imposed by the Lower Court. Although it was the intention of Dr. Aswell that petitioner should return only to light work, according to his testimony, his letter simply discharged petitioner to return to work and we feel that the defendant could rely on the Doctor’s letter.
Although the substance of Dr. As-well’s testimony is that he discharged petitioner to return only to light work in October, the record shows that the petitioner did return to light work with his original employer and at the same pay. The employer testified that he told petitioner that the doctor said that his leg was all right but that petitioner had to exercise it and that he gave petitioner light work until such time that petitioner thought he could do heavier work. The petitioner remained on such work for a few days, during which he occasionally missed work upon the excuse that his wife was very ill with cancer. Finally the petitioner quit for the reason that his wife was very ill, and he had to care for her. The petitioner agreed that he told his employer that his wife was sick, however, he now contends that the real reason that he did not continue working was because his foot hurt too much. Under the circumstances we feel that the petitioner has failed to prove that the defendant was arbitrary and capricious in its failure to continue compensation payments after the petitioner had returned to work and then quit because of reasons 'other than his injuries. Therefore, we believe that the Lower Court erred in awarding penalties and attorney fees.
For the reasons hereinabove assigned, the decision of the Lower Court will be amended so as to disallow petitioner’s claim for penalties and attorney fees, and as amended the judgment below will be affirmed.
Judgment amended and as amended affirmed.